BOWNES, Senior Circuit Judge,
with whom LIPEZ, Circuit Judge, joins (dissenting).
I dissent for two reasons. First, I do not think there is a sufficient basis to find that Jobe had notice of the IJ decision to deport him in absentia well before the expiration of the 180-day time period set forth in INA § 242B(c)(3)(A). Second, even if Jobe received such notice, that fact alone does not establish that the running of the 180-day period for filing a motion to reopen should not be equitably tolled. The majority says Jobe was insufficiently diligent in pursuit of his rights. That diligence analysis requires consideration of *102 other factors, particularly Jobe’s alleged reliance on an attorney who may have represented him ineffectively. Without further fact-finding, we cannot know the circumstances surrounding Jobe’s untimely motion to reopen, and so cannot fairly dispose of his case. Regrettably, the majority does the fact-finding here. That is not a proper appellate function.
I.
The majority finds “that in May or June of 1996, several months before the expiration of the 180-day time period set forth in INA § 242B(c)(3)(A), Jobe learned that an IJ had taken some action on his asylum application and was advised to consult an attorney immediately. Despite this knowledge and advice, Jobe took no action to protect his rights for more than half a year.” I do not think the majority’s reasoning withstands scrutiny. It depends in large part upon the interpretation of two affidavits of a presumed friend of Jobe, Sulayman Bah. The first affidavit is dated 4/August/1997. There are no dates in the body of the affidavit. It states as follows:

AFFIDAVIT OF SULAYMAN BAH

I,SULAYMAN BAH, having been duly sworn upon oath, do hereby depose and say:
1. My name is Sulayman Bah and I live at 933 E. 224th Street, # 1Á, Bronx, New York 10466.
2. I served as a mediator between Sulay Jobe and Attorney Earl David.
3. Sulay Jobe asked me if I knew of any New York Attorneys because attorneys in Rhode Island are extremely expensive. I introduced Sulay Jobe to Earl David. Attorney David charged Sulay Jobe $600.00 for his legal services.
4. Attorney David promised to transfer the case to New York. Attorney David told me that he had written for the case to be transferred from Boston to New York. I believed him and told Sulay Jobe to disregard the hearing date scheduled for Boston. I told Sulay Jobe that Immigration will inform him of his new Court date in New York.
6. The next letter addressed to Sulay Jobe was a ruling from the Immigration Court that was done in Sulay’s absence. I advised Sulay of this letter and told him to see an Attorney immediately.
6. I found out shortly thereafter that Sulay had been arrested by Immigration.
The second affidavit is to “correct the record in the matter of Sulay Jobe.” It was executed on September 11, 1997. It states:
I, Sulaman Bah, being duly sworn, deposes and states the following under penalty of perjury: I would like to correct the record in the matter of Sulay Jobe. I told Mr. Jobe to disregard the hearing date since I was told by Mr. David that he wrote a letter to transfer the file. When the notice of decision came to the New York address, on or about May — June, 1997, I received the notice of decision from the Court at 933 E. 224th Street, Bronx, N.Y. 10466. I immediately contacted Mr. Jobe regarding this notice. I then left the country and later on heard that Mr. Jobe was arrested.
X_/s/ Sulaman Bah
Sulaman Bah
The majority makes the rather remarkable finding: “It is clear from context, however, that Bah intended to state that the notice of decision arrived in May — June 1996.” Majority Op. at 100-01.
This affidavit was given “to correct the record in the matter of Sulay Jobe.” How do we know that Bah intended to state that the notice of decision arrived in May-June 1996? The only dates given in his affidavit are “on or about May-June 1997.” How can the majority be so sure that the dates Bah gave in his corrected affidavit were wrong? We know nothing about Bah except what he states in his affidavits. His deposition was not taken. We have no *103 way of judging either his credibility or competence.
The dates of the receipt of the notice found by the majority must be established by a preponderance of the evidence. The court attempts to meet this burden by stating
Thus, already knowing (as we do) that (1) Bah’s sworn correction is mistaken insofar as it refers to May-June 1997; and (2) notice of a ruling handed down in Boston on May ¿2,1996 is likely to reach New York by mail sometime around May-June 1996, the logical inference is that Bah (who swore out the correction in September 1997) inadvertently substituted “1997” for the intended “1996.”
Majority Op. at 101. But we do not know in the true sense of the word anything but what is stated in the affidavit. Bah may have been mistaken about the dates he stated in the affidavit but we do not know that he was.
It seems significant that the only substantive difference between Bah’s first and second affidavit is the inclusion of dates. If the affidavit was amended to clarify the timing of events, which seems to have been the intent, this makes it more likely that the May-June 1997 date is correct. If providing a date was the purpose of the amendment, we can presume that particular attention was given to the accuracy of the reported date.[1]
It should also be noted that Bah’s second affidavit states that he received notice of the decision at 933 E. 224th Street, Bronx, N.Y. 10466. His first affidavit confirms this address, but includes an apartment number, # 1A. Attorney David’s venue change request states that Jobe lived at the New York address, but at apartment # 1. We do not know whether the correct address was the one with apartment # 1, the one with apartment # 1A, or the one without any apartment number. It is, at least, possible that these variant addresses might have affected the date Bah received the order.
The majority also states: “Indeed there never has been a suggestion that the arrival of the notice was in any way untimely, as these surely would have been had that in fact been the case.” Majority Op. at 101. This, of course, ignores that there is only one date given in Bah’s two affidavits. The second affidavit states that “the notice of decision came to the New York address, on or about May-June 1997.” The decision of the court assumes that there is always an orderly and logical sequence to a chain of events. Such a belief is natural to judicial thinking and analysis. But as Justice Holmes pointed out: “The life of the law is not logic but experience.” And experience teaches that many things happen that cannot be explained by logical analysis. There are at least three explanations that might account for the dates mentioned in Bah’s affidavits: a late mailing by the INS, a late delivery by the post office, or a delivery to a wrong address.
I do not think that the affidavits can or should be used for finding, as the court does, that “Jobe took no action to protect his rights for more than half a year.” Majority Op. at 101. It constitutes appellate findings of facts based on inferences and unsubstantiated assumptions. The only way to determine the facts in this case is to have a hearing before the Immigration Court.
II.
Aside from the uncertainty about the date on which Jobe received notice of the IJ’s decision, the facts here do not establish Jobe’s ineligibility for equitable tolling. The majority relies exclusively upon one *104 “fact,” based on one of Bah’s affidavits, to conclude that Jobe was insufficiently diligent in pursuing his asylum application, and hence he would not be entitled to equitable relief. That one fact is Bah’s assertion that he advised Jobe of the IJ’s decision immediately after he received it and told Jobe to see an attorney. But that one fact does not exhaust the reasonable diligence inquiry when the record strongly suggests Jobe’s dependence on others to protect his rights, including an attorney who may have been consistently ineffective in protecting Jobe’s rights prior to the May 22, 1996 hearing, and subsequent to the issuance of the in absentia deportation order.
From the time his hearing before the IJ was scheduled, Jobe relied upon his friend Bah, as well as Attorney David, for guidance in his immigration proceedings. Jobe states in his affidavit (drafted by a translator fluent in both English and Jobe’s native Wolof), “I do not read, write or speak the English language.” Jobe sought the assistance of Bah in obtaining counsel, and the two of them met with Attorney David in New York with Bah acting as translator. The nature of the attorney-client relationship established at their initial meeting is unclear. Jobe’s affidavit suggests his understanding that David would represent him in his asylum claim generally: “I retained Attorney Earl S. David to represent me in my asylum proceedings.” This understanding would have been reasonable, based on the fact that David represented Bah in the immigration proceedings resulting in his successful asylum claim. Guided by Bah, Jobe would likely seek the same service from David. Nevertheless, David’s letter of justification to the Board of Immigration Appeals defending himself against charges of ineffective assistance of counsel suggests that he was retained exclusively to obtain a change of venue for Jobe’s asylum hearing, a seemingly minimal task for the $600 fee that Bah says David received. Thus, at the beginning of the attorney-client relationship, there may have been miscommunications between Jobe and David.
With Bah’s assistance, Jobe requested that David obtain a transfer of his Boston-based immigration court hearing to his new home, New York. As he recalls, “Attorney David told me that he would be transferring his case to New York.” Bah corroborates this account, while David denies it, saying that “[u]nder no circumstances did I promise to transfer the file as the power to do so arises from the government, not this office.”
Prior to the May 22nd hearing date, Jobe says he again contacted David, through Bah, to say he would be unable to make the Boston court appearance due to a back injury. According to Jobe, “Attorney David told [Bah] that [the] case had already been transferred to New York and that a new hearing date would be set,” a communication that David again claims never happened. Indeed, David says he told Jobe through Bah that he would have to attend the hearing on May 22, 1996 in Boston regardless of the outcome of the change of venue request.
In reality, David’s request for a change of venue, submitted on April 12, 1996 with no supporting evidence or affidavits, was never adequate to win a transfer. A change of venue request may be granted by an IJ for “good cause.” 8 C.F.R. 3.20. In seeking a change of venue, “the mere fact that an applicant allegedly resides ... in another city, without a showing of other significant factors associated with such residence, is insufficient.” Matter of Rahman, 20 I & N Dec. 480 (BIA 1992). Yet that residence in another city is all David offered to the IJ to support the change of venue request. Furthermore, it is difficult to credit David’s insistence that he told Jobe he had to appear in Boston on May 22 under any circumstances, ready, apparently, to represent himself, after Jobe had retained David to represent him in his asylum proceedings. Jobe hired David because he could not effectively represent himself. Yet Attorney David did not at *105 tend the May 22nd sitting in Boston. Moreover, if David was so sure that the May 22 hearing would take place, and he told Jobe to be there without David’s representation, did he give Jobe any advice on what he had to do to protect his interests? Apparently not. David says he just told Jobe to be there, an ineffective contribution even on David’s version of the facts.
David characterizes the events surrounding the transfer request and missed hearing as “an unfortunate miscommunication.” Indeed, it was an unfortunate mis-communication, depriving Jobe of the opportunity to present his asylum claim and resulting in the issuance of an in absentia deportation order. It was also another miscommunication that seemed to plague the David-Jobe attorney-client relationship.
We also do not know from this record what Jobe understood about the information given to him by Bah concerning the decision of the IJ after Jobe failed to appear in Boston on May 22. In his affidavits, Bah only indicates that he “contacted Mr. Jobe regarding this notice,” and states his impression that “a ruling from the Immigration Court ... was done in Sulay’s absence.” Bah does not say that he told Jobe of his imminent deportation. In addition, it is not clear from the record that Jobe ever took possession of the correspondence. The best evidence that Jobe did not understand the effect of the order is that he sought out the Immigration Office in December regarding his employment authorization, a risk an immigrant would be unlikely to take if he understood his deportation was imminent. If Jobe did not actually receive notice of the IJ’s in absentia decision, he then learned of his deportation status only on December 4, 1996 when he sought employment. The timespan between this notification and the February 11, 1997 fihng of motions to reopen and to stay deportation cannot be characterized as a failure to take action, as the majority suggests.
Meanwhile, having advised Jobe “to see an Attorney immediately,” Bah, Jobe’s only liaison to his attorney, leaves the country. As noted, Jobe states in his affidavit ihat he was relying on Attorney David to represent him in his asylum proceedings. David apparently had a more limited view of his obligation to Jobe, possibly leaving Jobe to rely on an attorney who felt no obligation to help him even after the issuance of the in absentia deportation order. There is some evidence that David himself learned of the deportation order. He writes that, apparently after issuance of the IJ decision: “I tried to reach my client by mail and by the number I had in my file but it was to no avail.” While David had failed to file a EOIR-28 “Notice of Entry of Appearance” form with the INS,[2] another suggestion of ineffective representation, the fact that David’s address appears prominently on the request for change of venue may have been enough for him to be fisted as the attorney of record in Jobe’s immigration court proceedings. If David did know of the in absentia deportation order, there is no evidence that he made any effort to file a motion to reopen in a timely fashion, despite his apparent awareness that an “unfortunate miscommunication” between himself and Jobe contributed to Jobe’s failure to appear in Boston.
Without clarification of David’s obligation to protect Jobe after the issuance of the in absentia deportation order, and David’s apparent inaction despite any such obligation, a real issue of ongoing ineffective assistance during this critical period exists, which would further account for Jobe’s delay in seeking relief from the in absentia deportation order.
In summary, without the support of Bah to comprehend the English language, and perhaps without the support of a reliable *106 attorney who Jobe thought was protecting his interests, it may have been difficult for Jobe to understand his peril and to press his claim more diligently. Yet the majority sees no relationship between these facts and the equitable tolling doctrine. Whether a party is reasonably diligent in" ascertaining their claim is a matter of fact. Se.e Salois v. Dime Sav. Bank, 128 F.3d 20, 26 (1st Cir.1997). In this case, there has been no fact-finding on the diligence issue because the BIA concluded that the 180-day time limit was not subject to equitable tolling. As a legal proposition, that conclusion is wrong. See Lopez v. INS, 184 . F.3d 1097, 1100 (9th Cir.1999). Equitable tolling does apply to the 180-day time limit. There is conflicting and inadequate evidence as to Jobe’s notice of the IJ decision, his capacity to pursue a timely motion to reopen, and the burdens imposed by ongoing ineffective assistance of counsel. There has been no chance for Jobe to make a showing as to his diligence, and the case should not be disposed of on the basis of one fact which, upon fair examination, may show little about Jobe’s reasonable diligence in pursuing his rights.
III.
I think it important to focus on the situation that led to this case. Jobe was a native and citizen of Gambia where he had been employed as a chauffeur for a deposed president’s Minister of Education and Agriculture. According to the record, Jobe claimed that he had reason to fear that he would be hurt and/or killed if he were to return to Gambia. Jobe overstayed his visa and though he was undetected by the INS, he presented himself and sought political asylum. When the INS received this request, they denied the request for political asylum and put him into deportation proceedings. The INS issued an Order to Show Cause and told him that he could request political asylum at his deportation hearing. We know the rest: he failed to appear at his May 22 hearing and was ordered deported. Therefore he never had the opportunity to request political asylum at a deportation hearing; his ultimate goal when he presented himself before the INS.
I do not think it fair or just to deport an individual and put his life in danger on the basis of appellate fact-finding. We should rule, as the panel did originally, that the 180-day time limit for reopening is subject to equitable tolling, that ineffective assistance of counsel may provide a basis for the application of the equitable tollihg doctrine, and that there should be a hearing by the IJ to determine whether the running of the 180-day period for filing a motion to reopen should be equitably tolled on the facts of this case. If so, there should be a hearing on Jobe’s motion to reopen, giving him an opportunity to make the case that he should be given a new hearing on his asylum application.
For the foregoing reasons, I respectfully dissent.

. We do not even know that the same person made out both affidavits. The name of the affiant in the first affidavit is given as Sulay-man Bah; in the second the first name is Sulaman. I do not think it fair to make a finding that results in deportation of an individual by changing dates in a sworn affidavit which may have been executed by two different affiants.

. The BIA Practice Manual indicates that an entry of appearance must be filed upon “the first appearance of an attorney or representative,” as well as with the filing of an appeal, a motion to reconsider, a motion to reopen, and when there is a change of business address.